UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VERDESSA M. BUCHANON, | ) | Case No.  1:06CV3030 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | Magistrate Judge George J. Limbert |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, | ) | OF MAGISTRATE JUDGE |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security finding that she was no longer disabled or entitled to Supplemental Security Income (SSI).  ECF Dkt. #1, 17.  Plaintiff asserts that the Administrative Law Judge (ALJ) erred in his December 19, 2003 decision because he denied her a full and fair hearing by failing to elicit complete testimony from her regarding her functional limitations and symptoms.  *Id*. at 3.  She also argues that the ALJ erred in failing to completely develop the record.  *Id.* at 6.  For the following reasons, the undersigned recommends that the Court find that substantial evidence supports the ALJ's decision.

**I.    PROCEDURAL HISTORY**

Plaintiff filed an application for SSI on December 23, 1996, alleging disability due to a right ankle fracture.  Tr. at 68-72.  The agency granted Plaintiff's application, finding that her condition met Listing 1.11 and she was disabled as of June of 1997.  *Id*. at 86.

1

On October 4, 1999, the Social Security Administration (SSA) advised Plaintiff that her benefits would terminate as of September 1999, because, based upon its review of her case, her health had improved and she was no longer disabled. Tr. at 87. Plaintiff filed for reconsideration of the cessation of her benefits and had a conference before a Disability Hearing Officer on March 29, 2001. *Id.* at 91, 122-129. At that conference, Plaintiff appeared pro se. *Id*. at 95. The Hearing Officer found that Plaintiff no longer met or equaled Listing 1.11 as evidence showed that the ankle was well-healed with little residual impairment. *Id*. at 95-96. The Hearing Officer further found that Plaintiff was no longer disabled because she could perform work that involved sitting, standing and walking without restriction, lifting and carrying up to ten pounds frequently and twenty pounds occasionally, with occasional crouching and no climbing of ladders. *Id*. at 100. She further found that Plaintiff could engage in most kinds of light work and could return to prior employment as a barmaid. *Id*. at 101.

Plaintiff thereafter filed a request for hearing before an ALJ, indicating that she still had plates and pins in her foot and ankle and suffered from heavy swelling. Tr. at 107. She also complained that she had a bump on her head that was sore and her left eye was blind. *Id*. A hearing date was set and on October 1, 2003, Plaintiff appeared at the hearing. *Id*. at 44. The ALJ informed Plaintiff of her right to be represented by a lawyer or another representative at the hearing and Plaintiff indicated that she was comfortable going forward with the hearing without representation. *Id*. at 47. Plaintiff and a vocational expert testified at the hearing. *Id*.

On December 19, 2003, the ALJ issued a decision, finding that while Plaintiff suffered from the severe impairments of residual effects of a right ankle fracture, chronic obstructive pulmonary disease, and amblyopia of the right eye, her impairments, individually or in combination, did not meet

-2-

or equal the Listings. Tr. at 21. The ALJ further found that since October 1, 1999, Plaintiff had the residual functional capacity (RFC) to perform a range of light work, with the abilities to: lift, carry, push or pull ten pounds frequently and twenty pounds occasionally; sit, stand and/or walk up to six hours each per eight-hour workday; occasionally crouch and walk on uneven surfaces; no use of ladders, ropes or scaffolds; and no exposure to even moderate fumes, odors, dust, or gases; and no tasks requiring binocular vision. *Id*.

The ALJ went on to find that Plaintiff's medical condition related to her ability to work had improved since October 1, 1999 and, within the framework of Medical-Vocational Rule 202.17, there were a significant number of jobs that she could perform. *Id*. at 22. The ALJ therefore found that Plaintiff's disability had ceased on October 1, 1999 and she was no longer entitled to SSI. *Id.*

Plaintiff requested review of the ALJ's decision before the Appeals Council and legal counsel was appointed to represent her. Tr. at 10. The Appeals Council denied the request for review, finding no reason for reviewing the decision. *Id.* at 3-4. Plaintiff filed an appeal to this Court and Defendant answered. ECF Dkt. #s 1, 14. Both parties have filed briefs addressing the merits of the case. ECF Dkt. #s 17, 18. At issue is the decision of the ALJ dated December 19, 2003, which stands as the final decision. Tr. at 15-22; 20 C.F.R. § 404.984.

## II. **SUMMARY OF MEDICAL EVIDENCE**

The relevant medical evidence shows that on November 13, 1996, Plaintiff arrived at the emergency room complaining that the night before, she was extremely intoxicated at a bar when a fight broke out and someone had stepped on her foot. Tr. at 140. X-rays revealed a displaced fracture in the right lower extremity and swelling over the fracture. *Id.* at 145.

On May 1, 1997, Plaintiff was admitted to the hospital to undergo bone-graft surgery to repair a non-union of her right ankle. Tr. at 169-170. Plaintiff was discharged the next day with crutches

-3-

and pain medications. *Id.* at 172-173.

On May 30, 1997, Dr. Robert Weisenburger reviewed Plaintiff's records for the state agency and estimated that it would take four to five months for Plaintiff's ankle to heal after the surgery, with an additional one to three months for rehabilitation thereafter. Tr. at 187-188. He concluded that Plaintiff's condition met Listing 1.11 and advised a reassessment in early 1998. *Id.* at 188.

Evidence in the record since Plaintiff's award of disability benefits shows that Dr. Roth, a podiatrist, completed an agency questionnaire on August 25, 1999 indicating that he first examined Plaintiff on August 6, 1998 and last examined her on August 25, 1999. Tr. at 192. He noted Plaintiff's diagnosis of history of a fractured ankle with some post-traumatic arthritis. *Id.* at 190. He found that Plaintiff's ankle was functioning "very well" and she could stand six hours per day before needing a break, although she still suffered from occasional arthritic pain with prolonged standing. *Id.* He found that no complications had delayed Plaintiff's recovery and while she had a very slight limp in her gait, she did not use an ambulatory aid and an ambulatory aid was not necessary. *Id.* at 191. He reviewed a May 1997 x-ray and indicated that it showed a solid union of the fracture and he opined that Plaintiff had major function of her limb restored. *Id.*

Dr. Roth further found that Plaintiff's range of motion was within normal limits, she had normal muscle strength and she had been and could currently bear full weight on the ankle. Tr. at 192. He listed the most recent x-ray as August of 1998 which indicated a solid union with good fixation and Plaintiff had good to excellent response to the surgery and the minimal post-op physical therapy that she had received immediately following her surgery. *Id.* As to Plaintiff's abilities to sit, stand, walk, bend, lift, carry and handle objects, Dr. Roth noted that Plaintiff "healed <u>very</u> well & should be able to function normally. May require rest after 6 hrs of w.b. due to arthritic pain, otherwise - no long-term disability." *Id.* (emphasis in original). He also noted no problems with

Plaintiff's mental activities. *Id.*

On September 28, 1999, Dr. Starkey reviewed Plaintiff's records for the agency and concluded that Plaintiff could lift up to twenty-five pounds frequently and fifty pounds occasionally, she could stand and/or walk and sit about six hours of an eight-hour workday, she had unlimited abilities to push and pull objects and she had no postural, manipulative, visual, communicative or environmental limitations. Tr. at 196-202.

On January 10, 2000, Dr. Waldbaum evaluated Plaintiff at the request of the state agency. Tr. at 203. Plaintiff complained of constant aching pain in her right ankle, burning in her left foot, constipation, and left eye blindness from a childhood injury. *Id.* She was taking Darvocet and a bowel medication at this time. *Id.*

Dr. Waldbaum ordered an x-ray of Plaintiff's right ankle which showed that the fracture had united completely and the ankle joint space was normal, although calcification indicated tendonitis. Tr. at 206. Upon examination, Dr. Waldbaum observed that Plaintiff had a mild limp favoring her right lower extremity and she used a cane in her left hand, although it was not obligatory. *Id.* at 204. She also observed no atrophy or asymmetry or swelling. *Id.* Plaintiff performed all maneuvers required in the evaluation in a functional and nonantalgic manner. *Id.* She had difficulty toe-walking and heel-walking on the right. *Id.* Dr. Waldbaum concluded that Plaintiff presented as a "very functional person with mild residual discomfort and a very mild limp in the right lower extremity." *Id.* at 205. She opined that Plaintiff "could perform many different types of job description." *Id.*

In January 2000, a state agency doctor whose name is illegible, reviewed Plaintiff's records and completed a RFC assessment. Tr. at 211. He found that Plaintiff could lift ten pounds frequently and twenty pounds occasionally, stand, sit and walk up to six hours each per eight-hour workday, push and pull objects without limitation, and frequently climb ramps and stairs, never climb ladders, ropes

-5-

or scaffolds, and occasionally crouch. *Id.* at 211-213. He further concluded that Plaintiff had no manipulative, visual, environmental or communicative limitations. *Id.* at 214-215.

Plaintiff's treating physician, Dr Price, treated Plaintiff for her complaints of abdominal pain, shortness of breath and indigestion. Tr. at 225-240. Laboratory testing revealed relatively normal results, except for high triglycerides and low DKL cholesterol in April 2002. *Id*. at 232. A mammogram detected a density suggestive of a lymph node on the right breast, but the impression was that it was benign with no changes to suggest malignancy. *Id.* at 234. Plaintiff had a normal CT scan of the pelvis, and a normal CT scan of the abdomen. *Id*. at 235-236. Pulmonary function testing on April 3, 2002 revealed that Plaintiff had a mild obstruction and low vital capacity, possibly from a concomitant restrictive defect. *Id*. at 229.

From March 2002 to February 2003, Dr Scott, a podiatrist, treated Plaintiff. Tr. at 248-267. Plaintiff underwent a surgery to remove some bone from a hammertoe deformity on the little toe of her right foot. *Id.* at 256. X-rays of the toe on September 16, 2002 showed evidence of surgery and also showed minimal degenerative changes. *Id.* at 258.

Plaintiff presented to D.O.C. Optical Center for an examination, which revealed that her right eye had 20/20 vision and her left eye was amblyopic. Tr. at 244. No prescription was recommended because the 20/20 vision in the right eye and the fact that Plaintiff's left eye vision was unable to be corrected. *Id.*

### III.    **SUMMARY OF TESTIMONIAL EVIDENCE**

At the October 1, 2003 hearing before the ALJ, Plaintiff testified, as did a vocational expert. Tr. at 44. At the beginning of the hearing, the ALJ informed Plaintiff that she had the right to representation at the hearing and Plaintiff affirmed that she was comfortable proceeding with the

hearing without representation. *Id.* at 46-47. The ALJ and Plaintiff discussed the medical evidence in the record and the ALJ indicated that the records from Dr. Scott were missing as the agency had requested his records a number of times but still had not gotten them. *Id.* at 50. He indicated that the same occurred with regard to Dr. Bram's records. *Id.* The ALJ indicated that he would nevertheless like to go forward with the hearing because he did not want Plaintiff to have to wait for the hearing just because the doctors would not cooperate. *Id.* at 51. He reminded Plaintiff that the record was still open to take additional medical evidence and she could still submit additional evidence on appeal if she did not like his decision. *Id.*

Plaintiff testified that she was forty-seven years old and has a ninth-grade education. Tr. at 52. She had training as a cosmetologist and last worked tending bar and doing hair around 1989. *Id.* at 53.

Plaintiff complained that standing on her leg is bothersome as she could stand for two to three hours before her right leg starts to swell and becomes painful. Tr. at 53. She indicated that she was using a cane to help her and used it all of the time. *Id.* at 54. She stated that her surgeon had prescribed the cane right after her ankle surgery. *Id.*

Plaintiff indicated that she was currently still treating with Dr. Scott and he was giving her injections in her ankle every two months. Tr. at 55. She explained that the injections do not alleviate the pain but reduce the swelling. *Id.* She also indicated that she had shortness of breath, but she did not think that she had asthma and she was taking no medications for it. *Id.*

When asked to describe a typical day, Plaintiff reported that she gets up, takes a shower, gets dressed, goes to visit with people, watches soap operas and afternoon shows, runs errands and does laundry. Tr. at 57. She goes to the grocery store herself, and plays cards with friends. *Id.*

When asked if she wanted to add anything more to the hearing, Plaintiff responded that she felt like her eye was deteriorating a little more. Tr. at 58. She indicated that she had glasses but she was told that her eyesight would weaken as she aged and she was now struggling to see. *Id.* She also complained about her bowel and digestive system, indicating that she had to take medication in order to relieve constipation and help her go to the bathroom. *Id*. at 59.

The ALJ followed up with additional questions, asking if Plaintiff drove a car. Tr. at 58. Plaintiff responded that she passed the test for a driver's license even with the lack of vision in her left eye. *Id.* at 58-59.

Carol Mosley, the vocational expert, also testified. Tr. at 60. She asked Plaintiff whether Plaintiff's cosmetology license was up to date. *Id*. at 61-62. Plaintiff responded that it was not. *Id.* Ms. Mosley thereafter described Plaintiff's past jobs as light and skilled and light and unskilled. *Id*. However, upon reviewing the records, the ALJ noted that no jobs previously performed by Plaintiff qualified as past relevant work. *Id*. at 63.

The ALJ presented a hypothetical of a person with the same age, education and work background as Plaintiff who was limited to a light range of work with limitations to never using ladders, ropes or scaffolds, occasional crouching and walking on uneven terrain, and avoidance of even moderate exposure to fumes, dusts, gases and poorly ventilated areas, with no tasks that required binocular vision. Tr. at 64-65. Ms. Mosley answered yes when the ALJ asked whether any jobs existed in significant numbers in the national economy for such a person. *Id.* She described the jobs of cashier, cafeteria worker and counter clerk. *Id.* at 65-66.

The ALJ thereafter asked Plaintiff if she had any questions for the vocational expert and Plaintiff replied that she did not. Tr. at 66. The ALJ then asked Plaintiff is she wanted to tell the ALJ

-8-

anything else and she stated that she felt like her health was deteriorating. *Id.*

### IV. STEPS TO EVALUATE CESSATION OF DISABILITY BENEFITS

An ALJ's finding that a claimant is not entitled to continuing disability benefits because her disability has ceased must be supported by substantial evidence. 42 U.S.C. § 423(f)(1). Section 416.994(b) of Title 20 of the Code of Federal Regulations provides in relevant part that, except in certain specified situations, a claimant's disability will be found to have ceased only if (1) there has been any medical improvement in the individual's impairment or combination of impairments or an exception to medical improvement applies and (2) the claimant is now able to perform substantial gainful activity. Medical improvement is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 416.994(b)(1)(i). Medical improvement is considered to be related to the ability to work when the improvement increases a claimant's residual functional capacity. 20 C.F.R. § 416.994(b)(1)(iii)-(v). The decision of whether an ALJ should terminate benefits must "be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled." *Cutlip v. Sec'y Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994), quoting 42 U.S.C. § 423(f). The steps used to follow in determining whether a disability continues are outlined in 20 C.F.R. § 416.994(b)(5).

### V. STANDARD OF REVIEW

This Court's review of an ALJ's determination to terminate disability benefits is limited in scope by 42 U.S.C. § 405(g), which states that the "findings of the Commissioner of Social Security

as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, the Court's review is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner used the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Cutlip,* 25 F.3d at 286. Substantial evidence is more than a scintilla of evidence but less than a preponderance. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir.1981). It is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and it is based upon the record taken as a whole. *Id.* at 536.

In reviewing the Commissioner's decision, this Court does not conduct a de novo review, resolve conflicts in evidence nor decide questions of credibility. *Cutlip*, 25 F.3d at 286, citing *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir.1989) and *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984). If the decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Cutlip*, 25 F.3d at 286 [citations omitted]. In other words, if substantial evidence supports the Commissioner's decision that there has been medical improvement in the claimant's impairment(s) that are related to his ability to work and the claimant is now able to engage in substantial gainful activity, then the Court must find that the Commissioner correctly terminated the claimant's benefits. 42 U.S.C. § 423(f); *Cutlip*, 25 F.3d at 286.

## **VI.    ANALYSIS**

The undersigned notes that Plaintiff does not challenge whether substantial evidence supports the ALJ's decision finding that she was no longer disabled and entitled to SSI. Rather, Plaintiff asserts that the ALJ denied her a full and fair hearing because he failed to elicit complete testimony from her regarding her functional limitations and symptoms when she was unrepresented by counsel.

ECF Dkt. #17 at 3.  Plaintiff notes that the hearing before the ALJ only lasted a half-hour and she points to the transcript of the hearing which was only twenty-one pages long.  *Id.* at 3-4.  She further indicates that the ALJ's questioning of her was superficial and only ten pages long.  *Id.* at 4. Plaintiff also asserts that the ALJ failed to develop a complete record because he knew that all of her medical records were not before him and he failed to postpone the hearing or give Plaintiff the opportunity to present additional evidence prior to the issuance of his decision.  ECF Dkt. #17 at 7-8.  Plaintiff also contends that it was the ALJ's duty to subpoena the missing records as she had a limited education and was unfamiliar with the Social Security process and she clearly implied at the hearing that she was expecting the Agency to obtain the missing records.  *Id*. at 8.

The undersigned recommends that the Court find no merit to Plaintiff's assertions.  The claimant has the ultimate burden of proving by sufficient evidence that she is entitled to disability benefits.  42 U.S.C.A. § 423(d)(5).  However, an ALJ has a heightened duty to develop the record under special circumstances, such as when a claimant is not represented, is not capable of presenting an effective case, and is unfamiliar with hearing procedures.  *Nabours v. Comm'r of Soc. Sec*., 50 Fed.Appx. 272, 275 (6th Cir. 2002), unpublished, citing *Duncan v. Sec'y of Health & Human Servs.,* 801 F.2d 847, 856 (6th Cir. 1986) and *Lashley v. Sec'y of Health & Human Servs.,* 708 F.2d 1048, 1051-1052 (6th Cir. 1983).  An ALJ has a heightened duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," when the claimant is unrepresented at the hearing.  *Lashley,* 708 F.2d at 1052-1053.  The ALJ must be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.*  No bright line test exists for determining when the ALJ has assumed the role of counsel or failed to fully develop the record.  *Id.*  The Sixth Circuit has cautioned that the determination "of whether an ALJ has failed fully to

-11-

develop the record in derogation of this heightened responsibility must be determined on a case-by-case basis, and that it is clear that a claimant may waive his right to counsel." *Nabours*, 50 Fed.Appx. at \*\*3, citing *Duncan*, 801 F.2d at 856 and *Lashley*, 708 F.2d at 1052.

In the instant case, the record shows that Plaintiff waived her right to representation after the ALJ informed her of her right to counsel or another representative and indicated that they had previously discussed that right. Tr. at 47. Plaintiff indicated on the record that she was comfortable going forward without representation. *Id.* Further, while Plaintiff had only a ninth-grade education, nothing in the record suggests that she did not understand the proceedings or the questions asked of her and nothing in the record shows that the ALJ took advantage of her when she waived her right to proceed without representation. The ALJ explained the process and informed Plaintiff that if she did not understand any question asked of her, she could let him know so that he could provide further explanation for her. *Id.* at 48-49.

In further support of Plaintiff's assertion that the ALJ failed to afford her a fair and full hearing, Plaintiff points to the length of the hearing, the number of pages in the transcript and the ten pages of the twenty-one page transcript which covered the ALJ's questioning of Plaintiff. ECF Dkt. #17 at 4. Plaintiff contends that this shows that the ALJ's inquiry into Plaintiff's ability to care for herself was superficial at best as he asked general questions about Plaintiff's activities but failed to delve into more specific aspects of these activities in order to determine the impact of Plaintiff's impairments on her ability to perform these activities. *Id.* Plaintiff cites *Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048 (6th Cir. 1983) as support.

The Court should reject this argument. In *Lashley*, the Sixth Circuit Court of Appeals noted the brevity of the twenty-five minute hearing and the eleven-page transcript of the hearing. 708 F.2d

-12-

at 1052. However, the Court found that the ALJ's finding that the claimant had a mental impairment was not supported by substantial evidence and indicated that Plaintiff "possessed limited intelligence, was inarticulate, and appeared to be easily confused." *Id*. The Court compared Lashley to the articulate claimants in *Holden v. Califano*, 641 F.2d 405 (6th Cir. 1981) who were not "uneducated or ignorant" or "timid". After making this comparison, the *Lashley* Court held that "[t]his difference in the articulateness of the claimant imposed a special duty on the ALJ to be especially probing in his questioning. This duty was not satisfied." *Lashley*, 708 F.2d at 1052.

While the hearing in the instant case lasted less than a half-hour, its transcript was twenty-one pages long. And while Plaintiff has a limited education, nothing in the record supports a finding that she was inarticulate or easily confused. The Sixth Circuit in *Lashley* did find that "[s]uperficial questioning of inarticulate claimants or claimants with limited education is likely to elicit responses which fail to portray accurately the extent of their limitations." *Id.* In the instant case, however, the ALJ's questioning was not superficial. While it is true that it could have been more detailed, Plaintiff portrayed her impairments and limitations in an articulate and rather detailed manner.

Plaintiff points to a section of the transcript where the ALJ questioned her about her daily activities. ECF Dkt. #17 at 4-5. She asserts that this questioning was superficial because the entire inquiry took only one page to transcribe and raised more questions than it answered. *Id.* Plaintiff posits that the extent of her limitations is a material issue which was not properly developed by the ALJ at the hearing. *Id.* at 5.

It is true that the ALJ spent only one page talking about Plaintiff's daily living activities. Tr. at 57. However, he spent a reasonable time with Plaintiff discussing her impairments and the reasons she felt that she could not work. *Id*. at 53. They discussed each impairment and the extent of Plaintiff's pain and they went over the therapies and medications that she had sought regarding her

-13-

impairments. *Id*. at 53-57, 58-60. Plaintiff further related to the ALJ that she thought that she could stand for two or three hours and she told him of her deteriorating eyesight and her breathing problems. *Id.* at 53, 56. The ALJ also gave Plaintiff the opportunity to question the vocational expert. *Id*. at 66. Moreover, the ALJ asked Plaintiff numerous times if there was any further information that she wanted to tell him in considering her claim. *Id*. at 58, 59, 60, 66. In fact, at the end of the hearing, the ALJ told Plaintiff,

> I've asked everybody all the questions I have to ask them except for one that I promised I would ask you, and, and that is whether there's anything else you want to say to me, because if there is, I definitely want to hear it.

*Id.* at 66. Plaintiff replied that there was no further statements that she wished to make, except that she was just trying to "keep" her health. *Id.*

While the ALJ did not go into more detail about Plaintiff's daily living activities, the record of the hearing reflects that Plaintiff was not inarticulate or easily confused about the hearing or that they only superficially discussed Plaintiff's impairments and her resulting limitations. For these reasons, the undersigned recommends that the Court find that the ALJ afforded Plaintiff a full and fair hearing.

The undersigned further recommends that the Court find that the ALJ fulfilled his duty to develop the record. Plaintiff argues that medical evidence was missing from the record and the ALJ knew about the missing evidence and failed to obtain it. Plaintiff contends that it was incumbent upon the ALJ to subpoena the missing medical records and she cites cases from outside of this Circuit as support for the proposition that it is reversible error for an ALJ to fail to issue and enforce subpoenas to all of a claimant's treating physicians. ECF Dkt. #17 at 8.

20 C.F.R. §416.944(d)(1) provides that:

> When it is reasonably necessary for the full presentation of a case, an administrative law judge or a member of the Appeals Council may, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses

-14-

> and for the production of books, records, correspondence, papers, or other documents that are material to an issue at the hearing.

In *Duncan v. Secretary of Health and Human Services,* 801 F.2d at 856, the Sixth Circuit Court of Appeals held that:

> Duncan has not suggested, and we are unable to determine, what possible further information could have been brought forth at the hearing which would have enhanced a determination of disability. The ALJ thoroughly reviewed the evidence presented in this case and adequately discussed in his decision his analysis of Duncan's claims, the medical exhibits and testimony. We fail to see how, under these circumstances, Duncan has been denied a full and fair hearing.

It is clear from *Duncan* and other cases in the Sixth Circuit that Plaintiff must show prejudice resulting from any alleged failure by the ALJ to fully develop the record. *See id.*; *Delgado v. Comm'r of Soc. Sec.*, No. 00-4200, 2002 WL 343402 (6th Cir. Mar. 4, 2002), unpublished.

Here, Plaintiff fails to show that additional medical evidence was necessary for the ALJ's decision or the impact that this additional evidence would have had on her claim. The ALJ had treating physician notes from Dr. Roth, Plaintiff's original podiatrist who treated her from August 1998 through August 1999 and opined that her ankle was functioning "very well" and she could stand six hours per day before needing a break. Tr. at 190. He further indicated that Plaintiff should be able to function normally. *Id.* at 192. Dr. Starkey, an agency reviewing physician, concluded that Plaintiff could lift up to twenty-five pounds frequently and fifty pounds occasionally and could stand/walk or sit for up to six hours per day. *Id.* at 196-202. Dr. Waldbaum provided an evaluation of Plaintiff's ankle at the request of the agency and concluded that Plaintiff was a "very functional person with mild residual discomfort and a very mild limp in the right lower extremity." *Id.* at 204. She found that Plaintiff could "perform many different types of job descriptions." *Id.* Two other agency physicians reviewed Plaintiff's medical records and found that she was able to perform light work with the abilities to sit, stand/walk up to six hours per day with limitations in climbing ladders, ropes or scaffolds and only occasional crouching. *Id.* at 214-215. Plaintiff's treating physician imposed no

physical restrictions on Plaintiff's abilities, and laboratory testing revealed normal results of CT scans of the pelvis and abdomen, relating to Plaintiff's complaints of abdominal pain, shortness of breath and indigestion. *Id*. at 225-240.  Only Plaintiff's triglycerides and DKL cholesterol was abnormal. *Id.* at 232.  Plaintiff was receiving injections for her ankle pain every two months and reported no other medications at the hearing before the ALJ.  *Id.* at 55.  X-rays of the right foot obtained on September 16, 2002 showed post-surgical and minimal degenerative changes with an osteotomy of the distal aspect of the proximal phalanx of the fifth toe.  *Id.* at 258.  Dr. Scott, Plaintiff's podiatrist from March 2002 to February 2003, performed surgery on October 7, 2002 to remove some bone from a hammertoe deformity on the little toe of Plaintiff's right foot.  *Id.* at 256.  None of Plaintiff's medical records showed a continuing disability.

Moreover, Plaintiff fails to provide any information relating to Dr. Bram, the physician whose records "may well have supported her claims." ECF Dkt. #17 at 7, 9.  Plaintiff does not inform the Court who Dr. Bram is, for which impairment this doctor treated her, what the medical evidence from Dr. Bram would show, or how the absence of this evidence prejudiced her claim.  Thus, the Court should find that Plaintiff does not show the requisite prejudice to support a finding that the ALJ failed to fully develop the record.

Without an explanation of the missing medical evidence or a showing that the missing medical evidence would have made a difference in the outcome of her claim, the Court should find that the ALJ was not required to issue a subpoena for such medical records.

## VII.   CONCLUSION

Based upon a review of the record, the Statements of Error and the law, the undersigned recommends that the Court find that the ALJ fulfilled his duty to afford Plaintiff a full and fair hearing and to fully develop the record in the instant case.  The undersigned further notes that Plaintiff does

not assert an argument relating to substantial evidence supporting the ALJ's determination that she experienced medical improvement related to her ability to work. Accordingly, the undersigned recommends that the Court affirm the ALJ's decision finding that she was no longer disabled or entitled to Supplemental Security Income.

Dated: January 16, 2008                              */s/George J. Limibert*
                                                                                  GEORGE J. LIMBERT
                                                                        U.S. MAGISTRATE JUDGE

     ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).